**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| PFIZER INC, FOLDRX PHARMACEUTICALS, LLC, PF PRISM IMB B.V., WYETH LLC, and THE SCRIPPS RESEARCH INSTITUTE,<br><br>  Plaintiffs,<br><br>  v.<br><br>DEXCEL PHARMA TECHNOLOGIES LIMITED, et al.<br><br>  Defendants. | C.A. No. 23-879-GBW-CJB<br><br>CONSOLIDATED |

**ANSWERING LETTER BRIEF TO THE HONORABLE CHRISTOPHER J. BURKE FROM CIPLA LIMITED AND HIKMA PHARMACEUTICALS USA INC. IN OPPOSITION TO DEFENDANT DEXCEL PHARMA'S MOTION TO COMPEL**

**SMITH, KATZENSTEIN & JENKINS, LLP**

Neal C. Belgam (No. 2721)
Daniel A. Taylor (No. 6934)
1000 West Street, Suite 1501
Wilmington, DE 19801
(302) 652-8400
nbelgam@skjlaw.com
dtaylor@skjlaw.com

**HEYMAN ENERIO GATTUSO & HIRZEL LLP**

Dominick T. Gattuso (No. 3630)
300 Delaware Avenue, Suite 200
Wilmington, DE 19801
(302) 472-7300
dgattuso@hegh.law

**Dear Judge Burke**: Cipla and Hikma (the "Co-Defendants")[1] oppose Dexcel's motion to modify the Stipulated Protective Oder ("SPO") to compel production of Co-Defendants' confidential, proprietary information ("Competitive Information") contained in what Dexcel calls "Contention Documents." D.I. 196.[2] Dexcel claims that without access to this information, it is unfairly disadvantaged because Plaintiffs' infringement arguments "potentially" contain contradictory statements relevant to Dexcel's invalidity defenses. *Id*. at 1-2. Dexcel's speculation regarding potential conduct by Pfizer does not provide a sufficient reason to modify the SPO in the first instance, much less demonstrate the "good cause" required by *Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 797-81 (3d Cir. 1994). Further, to the extent that Pfizer makes any such contradictory arguments, Co-Defendants, who are jointly working with Dexcel on invalidity issues, can advise Dexcel of any such arguments, and in fact have stated they will do so. D.I. 196 at Ex. C. Finally, Dexcel's alternative argument that the Court should order that the requested documents be produced with "redactions to preserve their usefulness" is not workable. Unless the Contention Documents are redacted to remove essentially all of the Competitive Information, which will provide no benefit to Dexcel, the very nature of the redactions will reveal Co-Defendants' Competitive Information, prejudicing them.

Dexcel's motion should be seen for what it is—an ill-considered attempt to obtain a competitive advantage against the Co-Defendants by undoing provisions in the SPO Dexcel negotiated and agreed to and upon which Co-Defendants, Plaintiffs, *and Dexcel* relied. The lack of merit in Dexcel's motion is shown by the fact it did not cite a single case where a court did what Dexcel is asking this Court to do. This is not surprising—if Dexcel is granted the relief it requests, the result will be a chilling effect on the negotiation of protective orders in Hatch-Waxman cases with multiple defendants. Dexcel's motion should be denied.

**Production of the Competitive Information on an OAEO basis will cause harm to Dexcel's direct competitors**. As stated above, Dexcel has the initial burden to provide a reason for modifying the SPO. *Pansy,* 23 F.3d at 790; *Bobrick Washroom Equipment, Inc. v. Scranton Products, Inc.,* 2017 WL 928917, *2 (M.D. Pa. Mar. 8, 2017). Dexcel has not met it. Dexcel states that it "has reason to believe" that helpful information either "potentially" exists now, or may exist in the future, but it cites no evidence. Dexcel's letter omits the fact that the Co-Defendants, *along with Dexcel, are preparing joint invalidity contentions and reports with Dexcel*. As a result, the Co-Defendants are already motivated to identify any "contradictory statements that undermine Pfizer's rebuttal validity arguments." D.I. 196 at 1. Thus, Dexcel does not need access to the Co-Defendants' Competitive Information based on the mere chance of Pfizer making inconsistent statements, especially where it will gain the benefit of any such inconsistent statements anyway.

---

[1] Reference to Hikma also includes Zenara, who was previously a defendant in this action. After the lawsuit began, Hikma purchased Zenara's ANDA and was substituted as a defendant for Zenara. D.I. 105.

[2] **Plaintiffs' Position**: Paragraph 17 of the Protective Order prevents disclosure of one Defendant's confidential information to another Defendant, and Dexcel has not shown good cause to amend the Protective Order. However, if the Court orders that redacted versions of certain documents be provided, Plaintiffs and Co-Defendants agree that Co-Defendants should apply those redactions.

Even if Dexcel carried its initial burden, however, consideration of the *Pansy* factors shows good cause does not exist to modify the SPO. For the past two years, the Co-Defendants have relied upon the provisions of the SPO, including paragraph 17, in producing to Plaintiffs confidential, trade secret information regarding their proposed ANDA products. Exs. 1-2, ¶7; Ex. 3, ¶6. Dexcel, who negotiated the terms of the SPO, also benefitted from its protection. Co-Defendants' reliance, as well as the fact that Dexcel negotiated the terms of the SPO it now seeks to undo, is a factor that favors non-disclosure. *Bobrick,* 2017 WL 928917, *4.

The other *Pansy* factors also weigh in favor of non-disclosure. In this regard, Dexcel states that disclosure on an OAEO basis will not violate privacy interests. Not so. The Co-Defendants have invested significant resources in developing their own non-infringing polymorphs of tafamidis. Exs. 1-2, ¶7; Ex. 3 at ¶6. The Competitive Information contains confidential, proprietary details of the Co-Defendants—*e.g*, development, manufacturing, and other proprietary technical information. *Id*. Disclosure of this type of information to a direct generic competitor will cause significant competitive harm to the Co-Defendants. Ex. 1, ¶¶12-13; Ex. 2, ¶¶11-12; Ex. 3, ¶11. Thus, this factor, which is a very important one, weighs against disclosure. *Bobrick*, 2017 WL 928917 at *2-3.

The information is also not being sought for a legitimate purpose (*Pansy* factor 2). *Even if* Dexcel does plan to use this information for invalidity purposes, even OAEO protection cannot block the "unconscious, but improper use of technical information." *Phillips Petroleum Co. v. Rexene Prods. Co.*, 158 F.R.D. 43, 36 (D. Del. 1994). Should Dexcel's attorneys obtain access to the Competitive Information, paragraph 10 of the SPO allows them to provide advice to Dexcel based on that Competitive Information, from which Dexcel can glean the strength of the Co-Defendants' infringement cases, and also inform its settlement decisions. Ex. 1, ¶16; Ex. 2, ¶15; Ex. 3, ¶14. For this same reason, modifying the SPO will not promote fairness or efficiency (*Pansy* factor 5). Instead, modification of the SPO will promote *inefficiency,* as negotiations of protective orders in future Hatch-Waxman cases will be more contentious. Finally, additional *Pansy* factors 4, 6, and 7, which Dexcel ignores, also weigh against disclosure.

**Providing redacted documents is unworkable and prejudicial to the Co-Defendants.** The Co-Defendants' trade secret Competitive Information is and will be interwoven into the Contention Documents that Dexcel seeks. Ex. 1, ¶11; Ex. 2, ¶10; Ex. 3, ¶9. As a result, redaction of that information is not workable, and will leave Dexcel with documents that do not provide the information it is seeking. It simply will not be possible to provide documents with limited redactions without providing Competitive Information to Dexcel, a direct competitor. Ex. 1, ¶14; Ex. 2, ¶13; Ex. 3, ¶12. For instance, the information left unredacted and the nature of the redactions themselves will allow Dexcel to understand the basis for the Co-Defendant's non-infringement positions. *Id*. This will again unfairly provide a competitive advantage to Dexcel, as discussed above.

The *Pansy* factors weigh against redaction for the same reasons discussed above. In addition, trying to provide those redactions, including contending with Dexcel's likely dissatisfaction with them, will pose an undue burden on the Co-Defendants.

Respectfully,

| | |
|---|---|
| */s/ Daniel A. Taylor* | */s/ Dominick T. Gattuso* |
| Neal C. Belgam (No. 2721) | Dominick T. Gattuso (No. 3630) |
| Daniel A. Taylor (No. 6934) | **HEYMAN ENERIO GATTUSO** |
| **SMITH, KATZENSTEIN &** | **& HIRZEL LLP** |
| **JENKINS, LLP** | 300 Delaware Avenue, Suite 200 |
| 1000 West Street, Suite 1501 | Wilmington, DE 19801 |
| Wilmington, DE 19801 | (302) 472-7300 |
| (302) 652-8400 | dgattuso@hegh.law |
| nbelgam@skjlaw.com | |
| dtaylor@skjlaw.com | *Of Counsel:* |
| | |
| *Of Counsel:* | Jeffrey S. Ward |
| | Emer L. Simic |
| Stuart D. Sender | Charlie K. Shih |
| Frank Rodriguez | **NEAL GERBER & EISENBERG LLP** |
| Amlan Ray | 225 West Randolph Street |
| Joshua I. Miller | Suite 2800 |
| **WINDELS MARX LANE &** | Chicago, Illinois 60606 |
| **MITTENDORF, LLP** | (312) 269-8000 |
| One Giralda Farms Madison, NJ 07940 | jward@nge.com |
| (973) 966-3200 | esimic@nge.com |
| ssender@windelsmarx.com | cshih@nge.com |
| frodriguez@windelsmarx.com | |
| aray@windelsmarx.com | *Attorneys for Defendant Hikma* |
| jmiller@windelsmarx.com | *Pharmaceuticals USA Inc.* |

*Attorneys for Defendant Cipla Limited*

3