IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PFIZER INC., FOLDRX PHARMACEUTICALS, LLC, PF PRISM IMB B.V., WYETH LLC, and THE SCRIPPS RESEARCH INSTITUTE,<br><br>*Plaintiffs,*<br><br>v.<br><br>DEXCEL PHARMA TECHNOLOGIES LIMITED, *et al.*,<br><br>*Defendants.* | C.A. No. 23-879-GBW-CJB<br>(Consolidated)<br><br>▮▮▮▮▮▮▮▮▮▮<br><br>Original Version Filed: February 5, 2026<br>Public Version Filed: February 12, 2026 |

**DEFENDANTS HIKMA PHARMACEUTICALS USA INC.'S AND CIPLA LIMITED'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO EXCLUDE <u>CERTAIN INFRINGEMENT TESTIMONY OF ADAM MATZGER, PH.D.</u>**

| | |
|---|---|
| SMITH, KATZENSTEIN<br>& JENKINS, LLP<br><br>Neal C. Belgam (No. 2721)<br>Daniel A. Taylor (No. 6934)<br>1000 West Street, Suite 1501<br>Wilmington, DE 19801<br><br>*Attorneys for Defendant Cipla Limited* | HEYMAN ENERIO<br>GATTUSO & HIRZEL LLP<br><br>Dominick T. Gattuso (No. 3630)<br>222 Delaware Avenue, Suite 900<br>Wilmington, DE 19801<br><br>*Attorney for Defendant Hikma Pharmaceuticals USA Inc.* |

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION ............................................................................................................. 1

II. PLAINTIFFS FAIL TO REBUT THAT DR. MATZGER'S OPINIONS DEPEND ON UNRELIABLE METHODS ................................................................... 2

    A. PLAINTIFFS FAIL TO REBUT THAT UNVALIDATED CURVE FITTING IS UNRELIABLE TO DEMONSTRATE THE EXISTENCE OF AN EXPERIMENTAL PEAK ........................................................................ 3

        1. Plaintiffs Do Not Dispute that Unvalidated Curve Fitting is Theoretical and the Results Are Based on Subjective User Inputs ............ 3

        2. Attorney Argument Cannot Validate Dr. Matzger's Curve Fitting Opinions ....................................................................................................... 6

        3. Plaintiffs Do Not Identify Any Scientific Support for Using Curve Fitting to Accurately Identify the Position of Peaks in ████████ ████████ Material ............................................................................... 6

    B. PLAINTIFFS FAIL TO REBUT THAT DR. MATZGER'S RAMAN MAPPING IS UNVALIDATED AND UNRELIABLE ....................................... 8

        1. Plaintiffs Cannot Cure Dr. Matzger's Failure to Validate his Raman Mapping Data ................................................................................ 8

        2. Automatic Peak Picking Does Not Validate Dr. Matzger's Raman Mapping ........................................................................................ 10

III. CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*10X Genomics, Inc. v. Parse Biosciences, Inc.*,
   2025 WL 572788 (D. Del. Feb. 21, 2025) ................................................................................2

*Coffey v. Dowley Mfg., Inc.*,
   187 F. Supp. 2d 958 (M.D. Tenn. 2002) ...................................................................................2

*In re TMI Litig.*,
   193 F.3d 613 (3d Cir. 1999) .....................................................................................................2

**Other Authorities**

Rule 702 ........................................................................................................................................10

# TABLE OF EXHIBITS

| Exhibit No. | Description |
|---|---|
| 3* | Opening Report of Dr. Adam J. Matzger, Ph.D. (excerpt) directed at Hikma, served June 27, 2025 |
| 4* | Opening Report of Dr. Adam J. Matzger, Ph.D. (excerpt) directed at Cipla, served June 27, 2025 |
| 7* | U.S. Patent No. 9,770,441 |
| 8* | Rebuttal Report of Jonathan Steed, Ph.D. (excerpt) |
| 9* | Rebuttal Report of Neil Spingarn, Ph.D. (excerpt) |
| 10* | November 20, 2025 Deposition Transcript of Neil Spingarn, Ph.D. (excerpt) |
| 14* | Brigitte Wopenka et al., *The Tendon-to-Bone Transition of the Rotator Cuff: A Preliminary Raman Spectroscopic Study Documenting the Gradual Mineralization Across the Insertion in Rat Tissue Samples*, 62(12) APPLIED SPECTROSCOPY 1285 (2008) |
| 23 | Reply Report of Dr. Adam J. Matzger, Ph.D. directed at Hikma, served November 7, 2025 excerpted to include additional portions relevant to Defendants' Reply |
| 24 | December 5, 2025 Deposition Transcript of Jonathan Steed, Ph.D. excerpted to include additional portions relevant to Defendants' Reply |
| 25 | Mark J. Henson & Lin Zhang, *Drug Characterization in Low Dosage Pharmaceutical Tablets Using Raman Microscopic Mapping*, 60(11) APPLIED SPECTROSCOPY 1247 (2006) |
| 26 | Hochul Woo & Adam J. Matzger, *Competitive Guest Binding in a Metal - Organic Framework with Coordinatively Unsaturated Metals*, 7 ACS MATERIALS LETTERS 450 (2025) |
| 27 | Diana Y. Siberio-Pérez et al., *Raman Spectroscopic Investigation of CH4 and N2 Adsorption in Metal-Organic Frameworks*, 19 CHEMISTRY OF MATERIALS 3681 (2007) |
| 28 | N. Shimodaira & A. Masui, *Raman Spectroscopic Investigations of Activated Carbon Materials*, 92 J. OF APPLIED PHYSICS 902 (2002) |
| 29 | Email from Plaintiffs' Counsel Ayelet Evrony of Williams & Connolly LLP dated December 19, 2025 to Hikma's Counsel, Emer Simic, Jeffrey Ward and Charles Shih of Neal, Gerber & Eisenberg LLP |

| 30 | Email from Plaintiffs' Counsel Ayelet Evrony of Williams & Connoly LLP dated December 19, 2025 to Cipla's Counsel, Joshua Miller, Amlan Ray, and Frank Rodriguez of Windels Marx Lane & Mittendorf, LLP and Neal Belgam of Smith, Katzenstein & Jenkins LLP |
|---|---|

*Exhibits previously submitted with Defendants Hikma Pharmaceuticals USA Inc.'s and Cipla Limited's Brief in Support of Their Motion to Exclude Certain Infringement Testimony of Adam Matzger, Ph.D.

## TABLE OF ABBREVIATIONS

| Abbreviation | Description | Exhibit No. (if applicable) |
|---|---|---|
| XRPD | X-ray Powder Diffraction | |
| ANDA | Abbreviated New Drug Application | |
| API | Active Pharmaceutical Ingredient | |
| Hikma's ANDA Product | The tafamidis (61 mg) product described in ANDA No. ▉▉▉ | |
| Cipla's ANDA Product | The tafamidis (61 mg) produced described in ANDA No. ▉▉▉ | |
| Defendants' ANDA Products | Hikma's ANDA Product and Cipla's ANDA Product | |
| Op. Br. | Defendants Hikma Pharmaceuticals USA Inc.'s and Cipla Limited's Brief in Support of Their Motion to Exclude Certain Infringement Testimony of Adam Matzger, Ph.D. | |
| Pl. Br. | Plaintiffs' Answering Brief in Opposition to Defendants Hikma Pharmaceuticals USA Inc.'s and Cipla Limited's Motion to Exclude Certain Infringement Testimony of Adam Matzger, Ph.D. | |
| '441 Patent | U.S. Patent No. 9,770,441 | 7 |
| Hikma Op. | Opening Report of Dr. Adam J. Matzger, Ph.D. directed at Hikma, served June 27, 2025 | 3 |
| Cipla Op. | Opening Report of Dr. Adam J. Matzger, Ph.D. directed at Cipla, served June 27, 2025 | 4 |
| Addl. Hikma Rep. | Reply Report of Dr. Adam J. Matzger, Ph.D. directed at Hikma, served November 7, 2025 excerpted to include additional portions relevant to Defendants' Reply | 23 |
| Steed Rep. | Rebuttal Report of Jonathan Steed, Ph.D. | 8 |
| Spingarn Rep. | Rebuttal Report of Neil Spingarn, Ph.D. | 9 |
| Spingarn Tr. | November 20,2025 Deposition Transcript of Neil Spingarn, Ph.D. | 10 |
| Addl. Matzger Tr. | December 17, 2025 Deposition Transcript of Adam Matzger, Ph.D. excerpted to include additional portions relevant to Defendants' Reply | 31 |
| Addl. Steed Tr. | December 5, 2025 Deposition Transcript of Jonathan Steed, Ph.D. excerpted to include additional portions relevant to Defendants' Reply | 24 |

| | | |
|---|---|---|
| Plaintiffs' Email 12/19/25 (Hikma) | Email from Plaintiffs' Counsel Ayelet Evrony of Williams & Connoly LLP dated December 19, 2025 to Hikma's Counsel, Emer Simic, Jeffrey Ward and Charles Shih of Neal, Gerber & Eisenberg LLP | 29 |
| Wopenka 2008 | Brigitte Wopenka et al., *The Tendon-to-Bone Transition of the Rotator Cuff: A Preliminary Raman Spectroscopic Study Documenting the Gradual Mineralization Across the Insertion in Rat Tissue Samples*, 62(12) APPLIED SPECTROSCOPY 1285 (2008) | 14 |
| Henson 2006 | Mark J. Henson & Lin Zhang, *Drug Characterization in Low Dosage Pharmaceutical Tablets Using Raman Microscopic Mapping*, 60(11) APPLIED SPECTROSCOPY 1247 (2006) | 25 |
| Woo 2025 | Hochul Woo & Adam J. Matzger, *Competitive Guest Binding in a Metal - Organic Framework with Coordinatively Unsaturated Metals*, 7 ACS MATERIALS LETTERS 450 (2025) | 26 |
| Siberio-Perez 2007 | Diana Y. Siberio-Pérez et al., *Raman Spectroscopic Investigation of CH4 and N2 Adsorption in Metal-Organic Frameworks*, 19 CHEMISTRY OF MATERIALS 3681 (2007) | 27 |
| Shimodaira 2002 | N. Shimodaira & A. Masui, *Raman Spectroscopic Investigations of Activated Carbon Materials*, 92 J. OF APPLIED PHYSICS 902 (2002) | 28 |
| Plaintiffs' 12/19/25 Email (Cipla) | Email from Plaintiffs' Counsel Ayelet Evrony of Williams & Connoly LLP dated December 19, 2025 to Cipla's Counsel Joshua Miller, Amlan Ray, and Frank Rodriguez of Windels Marx Lane & Mittendorf, LLP and Neal Belgam of Smith, Katzenstein & Jenkins LLP | 30 |
| Addl. Steed. Rep. | Rebuttal Report of Jonathan Steed, Ph.D. excerpted to include additional portions relevant to Defendants' Reply | 31 |

I.      INTRODUCTION

Plaintiffs' Answering Brief attempts to frame Dr. Matzger's Raman "analysis" of Hikma Pharmaceuticals USA Inc.'s ("Hikma") and Cipla Limited's ("Cipla") products as devastating to infringement. In fact, the opposite is true. Dr. Matzger obtained Raman spectra from the tafamidis API contained in each of Hikma and Cipla's ANDA Products and those products themselves. However, when Dr. Matzger analyzed those spectra using automatic peak picking parameters *chosen by him,* those spectra did not exhibit ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Because of this, Dr. Matzger resorted to data manipulation in the form of unvalidated curve fitting and Raman mapping to conjure up his infringement opinions in this case.

Plaintiffs' Brief simply ignores Dr. Matzger's problematic Raman data. Instead, Pfizer attempts to rehabilitate Dr. Matzger's *unvalidated* curve fitting opinions by circularly relying on Dr. Matzger's *unvalidated* Raman mapping results and reframing his curve fitting as "objective." This tactic fails not least because unvalidated mapping data pertaining to Defendants' *drug products* cannot possibly corroborate Dr. Matzger's theoretical curve fitting spectra of each Defendant's *API* but also because Dr. Matzger did not perform any such validation in his reports. And no amount of attorney argument can transform Dr. Matzger's use of curve fitting to—in his own words—"properly position ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" into an objective analysis. Hikma Op., ¶220; Cipla Op., ¶181.

Plaintiffs cannot shift the burden of validating Dr. Matzger's theories to Defendants by arguing that Defendants should have performed counter-testing to rebut Dr. Matzger's curve fitting and Raman mapping opinions and suggesting (baselessly) that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. They do not. Regardless, there was no need to perform additional testing because,

as noted above, Dr. Matzger's analysis of his own Raman spectra using automatic peak-picking demonstrates non-infringement.

## II. PLAINTIFFS FAIL TO REBUT THAT DR. MATZGER'S OPINIONS DEPEND ON UNRELIABLE METHODS

Plaintiffs attempt to reframe Defendants' criticism of Dr. Matzger's unvalidated curve fitting methodology and unvalidated Raman mapping as a mere difference of opinion amongst experts. Not so. Defendants seek to exclude Dr. Matzger's curve fitting and Raman mapping opinions because they are based on unreliable methods and unsupported assumptions (i.e., ███ ███████████████████████).

The cases Plaintiffs cite in support generally do not concern the admissibility of testimony based on unreliable methodology as is the case here. *See e.g., 10X Genomics, Inc. v. Parse Biosciences, Inc.,* 2025 WL 572788, at *1, *6 (D. Del. Feb. 21, 2025) (holding that (unlike here) the challenged expert's opinions were not based upon mere speculation or unsupported methods that would make her findings inadmissible at trial). The facts and holding in *In re TMI Litig.*, 193 F.3d 613 (3d Cir. 1999) (which Plaintiffs cite), however, are instructive. There, the Third Circuit upheld the lower court's exclusion of expert testimony because it was based on "a hypothesis yet to be explored" and had not been accepted by the broader scientific community. *Id.* at 667-668. Similarly, Dr. Matzger's curve fitting opinions amount to an unproven theory based on his assumption that ██████████████████████████ in the experimental spectra he obtained. Op. Br., 9-15. Dr. Matzger's Raman mapping opinions are also unproven theories since they have not been verified using objective reference standards. *Id.*, 18.

Plaintiffs attempt to distinguish *Coffey v. Dowley Mfg., Inc.,* 187 F. Supp. 2d 958 (M.D. Tenn. 2002), asserting that "Defendants point to no factual assumption Dr. Matzger made about the samples he tested." Pl. Br., 15, n.4. But that is precisely what Dr. Matzger did. By his own

2

admission, Dr. Matzger performed curve fitting on his Raman data (that was missing ███ ███) to "███████████████████████." Hikma Op., ¶220; Cipla Op., ¶¶181, 194. Dr. Matzger thus assumed infringement and manipulated the data to support his theory. Dr. Matzger similarly assumes that his Raman mapping data ███████████████ without verifying whether ██████████████████████████. Hikma Op., ¶¶246, 258, 267; Cipla Op., ¶¶185, 198. Because Dr. Matzger's *unvalidated* curve fitting and *unvalidated* Raman mapping opinions cannot be objectively tested, they are unreliable and should be excluded.

    A.    **PLAINTIFFS FAIL TO REBUT THAT UNVALIDATED CURVE FITTING IS UNRELIABLE TO DEMONSTRATE THE EXISTENCE OF AN EXPERIMENTAL PEAK**

        1.    **Plaintiffs Do Not Dispute that Unvalidated Curve Fitting is Theoretical and the Results Are Based on Subjective User Inputs**

Plaintiffs cannot dispute that curve fitting provides a theoretical spectrum or that the results of different curve fits can differ depending on user choices since Dr. Matzger admits as much in his reports. Pl. Br., 16-17. Instead, Plaintiffs attempt to counter Defendants' criticism by (1) spinning Dr. Matzger's subjective "fits" as "objective" "calculated spectra;" (2) ignoring Dr. Steed's alternative curve fits that demonstrate the unreliability of Dr. Matzger's method; and (3) rewriting Dr. Matzger's expert reports as though he had "validated" his curve fits. However, no amount of ink can rehabilitate Dr. Matzger's curve fitting, which remains subjective and unreliable.

Plaintiffs assert that curve fitting is not *wholly* theoretical because the initial step of visually identifying areas of potential peak overlap is "objectively verifiable" and the alleged "objective visual impetus" for Dr. Matzger's initial selection can be interrogated at trial. Pl. Br., 13. But absent knowledge of the contents of the sample, the selection of a region of allegedly overlapping peaks for deconvolution is entirely subjective. *See* Steed Rep., ¶¶116, 124, 150. For example, Dr. Matzger asserts that Figure 3 (excerpted and annotated below) provides evidence of ███████

3

███████████. Hikma Op., ¶220. But another user could easily conclude that there is no objective visual evidence of ████████████████████████████████████. Without knowing the ████████████ of the sample and having generated reference standards that indicate what peaks should be present and might overlap, Dr. Matzger's assertion that a region has overlapping peaks is necessarily subjective.

**Figure 3 – ███████ (XIX-1.4) Raman Scan**

████████████████████████████████████████████████████████

Next, Plaintiffs argue that, because Dr. Matzger allegedly performed deconvolution in accordance with the Raman software manual and the literature, the resulting "calculated" peaks are somehow objective and accurate. Pl. Br., 13-14. Plaintiffs omit that Dr. Matzger manipulated the raw data (e.g., removed the baseline) and then selected *what he believed to be the appropriate number and position of potential peaks* based on his subjective visual analysis of the region of interest before using the software to generate a theoretical spectrum. Op. Br., 4-5. The manner in which Dr. Matzger subjectively "[u]se[d] the mouse to position the approximate center of the band," has not been recorded or disclosed; thus, it is not possible to interrogate Dr. Matzger on those points at trial. Pl. Br., 5; 13.

Plaintiffs also argue that Dr. Matzger "did not blindly accept the software's fit but instead relied on multiple objective qualities of the fit, including the $\chi^2$ value and visual inspection." Pl.

4

Br., 14. But despite Plaintiffs' wordsmithing, these "qualities of the fit" are entirely subjective and, thus, cannot confirm the validity of the theoretical spectrum.

Regarding the $\chi^2$ value, it is dependent on the peaks subjectively selected by Dr. Matzger. In other words, garbage in, garbage out. Further, Dr. Matzger simply compared the $\chi^2$ values of his curve fit ▓▓▓▓▓▓ and decided ▓▓▓▓▓▓ ▓▓▓▓▓▓ ▓▓▓▓▓▓ ▓▓▓▓▓▓. Dr. Matzger cites no support whatsoever for concluding that a $\chi^2$ value that differs ▓▓▓▓ between two theoretical models is proof that ▓▓▓▓▓▓ actually exists in the experimental data. Nor does Dr. Matzger account for the fact that his model ▓▓▓▓▓▓ has fewer peaks than his model ▓▓▓▓▓▓, which, by itself, likely contributes to a "worse" fit. *See* Pl. Br., 16-17 citing Dr. Matzger ("[I]t is possible to create a good fit for almost any spectrum simply by placing a very large number of peaks."). Similarly, Dr. Matzger provides no method to objectively determine whether his theoretical spectra have a visually better or worse fit to the experimental data.

As Defendants explained, Dr. Steed demonstrates the unreliable nature of Dr. Matzger's use of curve fitting by creating alternative curve fits for the same data that have even lower $\chi^2$ values and comparable visual fits but that ▓▓▓▓▓▓. Op. Br., 11-13. Knowing that these fits show the subjective nature of Dr. Matzger's curve fitting, Plaintiffs ignore them. Instead, they criticize a *different* alternative curve fit by Dr. Steed. Pl. Br., 9-10. At bottom, Plaintiffs simply dismiss Defendants' curve fitting as "based on different inputs and flawed assumptions." Pl. Br., 14. Ironically, this criticism underlines the problem with Dr. Matzger's curve fitting – absent information about ▓▓▓▓▓▓ of the sample, the assumptions on

5

which his theoretical spectra are based are subjective, which means that they cannot reliably identify the position of a peak that is not present in the experimental data. Steed Rep., ¶124; Spingarn Rep., ¶76. Thus, Dr. Matzger's curve fitting opinions are unsupported theories that should be excluded under *Daubert*.

### 2. Attorney Argument Cannot Validate Dr. Matzger's Curve Fitting Opinions

Faced with Dr. Matzger's failure to corroborate his curve fitting opinions, Plaintiffs pivot and claim that Dr. Matzger's Raman mapping data validates his theoretical spectra. But such an argument is the creation of Pfizer's counsel. Pl. Br., 15. Nowhere does Dr. Matzger opine that his Raman mapping data validates his curve fitting opinions. This is unsurprising since this position has no scientific merit.

Dr. Matzger's curve fitting analyses in the main are based on his analysis of Raman spectra of samples of each of Hikma's and Cipla's tafamidis *API*. In contrast, Dr. Matzger relies on Raman mapping data with respect to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮). Thus, contrary to Plaintiffs' suggestion, Dr. Matzger did not rely on any Raman mapping data of ▮▮▮▮▮▮ to support his infringement opinions. Additionally, as detailed previously and further below, Dr. Matzger failed to validate his Raman mapping data. It defies reason that one set of unvalidated theories could be validated by another set of unvalidated data. Thus, Plaintiffs' attorney argument that Raman mapping data validates Dr. Matzger's curve fitting theories should be rejected.

### 3. Plaintiffs Do Not Identify Any Scientific Support for Using Curve Fitting to Accurately Identify the Position of Peaks in ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ Material

Plaintiffs assert that Dr. Matzger's curve fitting opinions should be permitted at trial because curve fitting "is an established, well-accepted scientific technique" supported by the patent in suit and by the scientific literature. Pl. Br., 8. Again, this is misleading and incorrect.

6

As previously explained, Dr. Matzger's reliance on the technique of curve fitting to prove the presence of an experimental peak in an unknown sample is not accepted in the scientific community. Op. Br., 15-18. Plaintiffs have not identified any literature references to the contrary. Each reference Plaintiffs cite employs curve fitting to analyze Raman spectra containing mixtures of materials *known to be present*. *See* Wopenka 2008; Woo 2025; Siberio-Perez 2007; Shimodaira 2002. In each instance, the curve fitting parameters that are used (i.e., the peaks inputted into the software) are based on the user's knowledge of external standards, i.e., reference spectra of the materials *known to be present* in the mixture. Plaintiffs fail to identify a single reference where curve fitting was used to establish the existence of a peak absent external experimental evidence that such a peak should exist in the material being tested because that material *is known to contain a component exhibiting that peak*.

Plaintiffs cannot circumvent this problem by asserting that the material being studied is tafamidis, so the material is "known." Pl. Br., 15. That is beside the point. While the API samples are tafamidis, Dr. Matzger does not know *ab initio* whether those samples contain ▮▮▮▮ ▮▮▮▮ Instead, Dr. Matzger conveniently and improperly assumes that ▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Hikma Op., ¶¶220, 227, 235, 254, 263; Cipla Op., ¶¶181-182, 189.

Plaintiffs' attempt to garner support for Dr. Matzger's curve fitting opinions from the '441 Patent likewise fails. Plaintiffs' citation to the statement that "a solid form that comprises two polymorphs will have a powder X-ray diffraction pattern that is a convolution of the two X-ray diffraction patterns" does not support Dr. Matzger's opinions. '441 Patent, 14:65-15:1. The '441

7

Patent simply references the possibility of convolution (or overlapping peaks) in a known mixture of two polymorphs. And the '441 Patent's statement that analytical parameters may require "optimization to enable for the detection of the[] characteristic peaks," refers to the analytical methods used in the patent (e.g., Raman spectroscopy and XRPD) and has nothing to do with theoretical curve fitting. *Id*. at 15:27-35.

Lastly, Plaintiffs incorrectly assert that Dr. Matzger "routinely applies curve fitting to identify unknown peaks in Raman spectra," citing two articles. Pl. Br., 17. Those articles are facially distinguishable and, therefore, do not substantiate Plaintiffs' assertion. In Woo 2025, the authors used curve fitting to quantify components in known mixtures using peak positions derived from reference standards of each component. *See* Woo 2025, Suppl. Information, Fig. S4. Siberio-Perez 2007 similarly uses curve fitting to assess the relative proportions of two known components of a mixture using reference standards. *See* 3682, Fig. 2.

### B. PLAINTIFFS FAIL TO REBUT THAT DR. MATZGER'S RAMAN MAPPING IS UNVALIDATED AND UNRELIABLE

Plaintiffs set forth a litany of excuses to explain why Dr. Matzger's unvalidated Raman mapping data does not require validation, none of which hold water.

#### 1. Plaintiffs Cannot Cure Dr. Matzger's Failure to Validate his Raman Mapping Data

Plaintiffs first repeat the argument (made elsewhere to justify unvalidated curve fitting) that Dr. Matzger's Raman mapping did not require validation using reference standards because Dr. Matzger was not characterizing an unknown material. As noted above, this argument misses the mark. Moreover, Dr. Matzger only relies on Raman mapping for his infringement opinions concerning Hikma's drug product exhibit batches, which contain tafamidis ▮▮▮▮▮. Hikma Op., ¶¶243-46, 258, 267. Dr. Matzger did not obtain reference spectra ▮▮▮▮▮

8

███████████████████; thus, he has no objective basis to support his opinion that peaks in his Raman maps were derived from the tafamidis API, as opposed to ████████, noise or degradants.

Next, Plaintiffs change tack and assert that Dr. Matzger's Raman maps of API demonstrate that ████████████████████████████████████████████. Pl. Br., 18. However, this opinion is not present in Dr. Matzger's reports and cannot be presented at trial. Although Dr. Matzger did obtain some Raman maps of ████████ it is telling that he did not include a single Raman map ████████ in his reports, let alone suggest that such data supports his interpretation of his Raman maps of ████████████████.

In response to Defendants' assertion that Dr. Matzger should have validated his Raman mapping using reference standards (i.e., Raman spectra of ████████████████ tafamidis ████████), Plaintiffs assert that this is solely the opinion of Hikma's expert, Dr. Steed, who allegedly lacks Dr. Matzger's expertise in Raman methods.[1] Pl. Br., 20. This is incorrect. Dr. Steed is an award-winning crystallographer with thirty years' experience studying crystalline molecular solids, which includes the techniques (i.e., Raman spectroscopy) that are used to study them. Addl. Steed Tr., 157:1-11; 160:2-9. And Henson 2006, which Plaintiffs cite, supports Dr. Steed's position. *See* Figs. 1-2 (depicting reference spectra of each component of the mixture being mapped). Finally, Plaintiffs repeat Dr. Matzger's excuse that obtaining reference standards would lead to accusations of contamination ████████████████. But, as noted in Defendants' Opening Brief, Dr. Matzger had no such concerns about contamination when he

---

[1] Dr. Matzger's alleged expertise and careful work is belied by the fact that he violated the Protective Order in this case by providing Hikma confidential XRPD information to its competitor, Cipla. *See* Plaintiffs' 12/19/25 Email (Cipla); Plaintiffs' 12/19/25 Email (Hikma). Dr. Matzger is not a careful scientist and is willing to use unreliable methods in his quixotic quest to show infringement.

9

analyzed Hikma and Cipla samples on the same day on the same instrument, and he testified that good laboratory practices would mitigate any such concerns. Addl. Matzger Tr., 218:21-219:4.

### 2. Automatic Peak Picking Does Not Validate Dr. Matzger's Raman Mapping

Finally, Plaintiffs attempt to repurpose automatic peak ▌ from his Raman maps as validation of Dr. Matzger's Raman mapping. In essence, Plaintiffs assert that if a "peak" is picked by the automated software, it must be ▌. Pl. Br., 6. Dr. Steed dismantles this position in his report. ▌

▌ Steed Rep., ¶140, Figure L. ▌

▌ *Id*. ▌

▌ Addl. Hikma Rep., ¶214; Spingarn Tr. 119:7-120:13.

The difference in ▌ directly refutes ▌ thereby absolving him from validating his mapping data. Absent validation using known reference standards of tafamidis API ▌, Dr. Matzger simply cannot reliably demonstrate ▌.

### III. CONCLUSION

For the foregoing reasons and the reasons set forth in our Opening Brief, Defendants respectfully request that the Court grant their Motion to exclude Dr. Matzger's proposed testimony that relies on curve fitting and/or Raman mapping under Rule 702 and Daubert.

10

| | |
|---|---|
| SMITH, KATZENSTEIN & JENKINS, LLP | HEYMAN ENERIO GATTUSO & HIRZEL LLP |
| */s/ Daniel A. Taylor* | */s/ Dominick T. Gattuso* |
| Neal C. Belgam (No. 2721)<br>Daniel A. Taylor (No. 6934)<br>1000 West Street, Suite 1501<br>Wilmington, DE 19801<br>(302) 652-8400<br>nbelgam@skjlaw.com<br>dtaylor@skjlaw.com | Dominick T. Gattuso (No. 3630)<br>222 Delaware Avenue, Suite 900<br>Wilmington, DE 19801<br>(302) 472-7300<br>dgattuso@hegh.law |
| *Attorneys for Defendant Cipla Limited* | *Attorney for Defendant Hikma Pharmaceuticals USA Inc.* |
| *Of Counsel:* | *Of Counsel:* |
| Stuart D. Sender<br>Frank Rodriguez<br>Amlan Ray<br>Joshua I. Miller<br>WINDELS MARX LANE & MITTENDORF, LLP<br>One Giralda Farms<br>Madison, NJ 07940<br>Phone: (973) 966-3200<br>Facsimile: (973) 966-3250<br>ssender@windelsmarx.com<br>frodriguez@windelsmarx.com<br>aray@windelsmarx.com<br>jmiller@windelsmarx.com | Jeffrey S. Ward<br>Emer L. Simic<br>Charlie K. Shih<br>NEAL, GERBER & EISENBERG LLP<br>225 West Randolph Street, Suite 2800<br>Chicago, IL 60606<br>(312) 269-8000<br>jward@nge.com<br>esimic@nge.com<br>cshih@nge.com |

Date: February 5, 2026