# EXHIBIT 31

███████████████████████

Case 1:23-cv-00879-GBW-CJB   Document 293-1   Filed 02/12/26   Page 2 of 5 PageID #: 3597

12/17/2025　　Pfizer Inc. et al. vs Dexcel Pharma Tech. Limited, et al.　　Adam Matzger, Ph.D.
Confidential

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

```
-----------------------------------X
PFIZER INC., FOLDRX                :
PHARMACEUTICALS, LLC, PF PRISM     :
IMB B.V., WYETH LLC, AND THE       :
SCRIPPS RESEARCH INSTITUTE,        :
                                   :
                Plaintiffs,        :
                                   :
                                   : Case No.
        v.                         : 23-879-GWB-CJB
                                   :
DEXCEL PHARMA TECHNOLOGIES         :
LIMITED, ET AL.,                   :
                                   :
                Defendants.        :
-----------------------------------X
```

***** CONFIDENTIAL *****

Deposition of ADAM MATZGER, Ph.D.

Washington, D.C.

Wednesday, December 17, 2025

9:04 a.m.

Reported by: Amanda Blomstrom, RMR, CRR
CSR TX #8785/IL #84-3634/CA #12681

_____

DIGITAL EVIDENCE GROUP
1730 M Street, NW, Suite 812
Washington, D.C. 20036
(202) 232-0646

Case 1:23-cv-00879-GBW-CJB   Document 293-1   Filed 02/12/26   Page 3 of 5 PageID #: 3598

12/17/2025          Pfizer Inc. et al. vs Dexcel Pharma Tech. Limited, et al.          Adam Matzger, Ph.D.
Confidential

Page 2

      Videotaped deposition of ADAM MATZGER,
Ph.D., taken on behalf of the Defendants, beginning
at 9:04 a.m., on Wednesday, December 17, 2025, at the
law offices of Williams & Connolly, 680 Maine Avenue,
SW, Washington, D.C. 20024, before Amanda Blomstrom,
RMR, CRR, CSR, and Notary Public of the District of
Columbia and State of South Carolina.

Page 3

APPEARANCES

ON BEHALF OF THE PLAINTIFFS PFIZER and THE SCRIPPS RESEARCH INSTITUTE:

    CHRISTOPHER J. MANDERNACH, ESQUIRE
    AYELET EVRONY, ESQUIRE
    WILLIAMS & CONNOLLY, LLP
    680 Maine Avenue, SW
    Washington, D.C. 20024
    202.434.5138
    cmanderach@wc.com
    aevrony@wc.com

ON BEHALF OF THE DEFENDANT CIPLA:

    JOSHUA I. MILLER, ESQUIRE
    WINDELS MARX LANE & MITTENDORF, LLP
    One Giralda Farms
    Madison, New Jersey 07940
    973.966.3238
    jmiller@windelsmarx.com

ALSO PRESENT:

    DeSHAWN WHITE
        Videographer

Page 4

INDEX

EXAMINATION OF ADAM MATZGER, Ph.D.                 PAGE
BY MR. MILLER                                         7

E X H I B I T S

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| 1 | United States Patent 9,770,441 B1 | 10 |
| 2 | Opening Expert Report of Adam Matzger, Ph.D. | 10 |
| 3 | Reply Expert Report of Adam Matzger, Ph.D. as to Cipla Limited | 12 |
| 4 | Adam Matzger Lab Notebook XX, Bates PFZ_00000095 through 00000102 | 18 |
| 5 | Adam Matzger Lab Notebook XX with no Bates stamps | 18 |
| 6 | List of files produced to Cipla in the litigation with "Title" and "Extension" columns | 30 |
| 7 | Adam Matzger Lab Notebook XXIII, Bates PFZ_00000101 through 00000107 | 90 |
| 8 | USP General Chapter 858, Raman Spectroscopy, Bates CIPEXP000022 | 128 |
| 9 | Protective Order dated 1/11/24, signed by Adam Matzger | 153 |

Page 5

E X H I B I T S (Cont'd)

| NUMBER | DESCRIPTION | PAGE |
|---|---|---|
| 10 | Angewandte Chemie, "Evading the Illusions: Identification of False Peaks in Micro-Raman Spectroscopy and Guidelines for Scientific Best Practice," by Jakob Thyr and Tomas Edvinsson | 234 |
| 11 | Blowup of the figure between Paragraphs 185 and 186 of Dr. Zaworotko's report | 274 |
| 12 | Page titled "Cosmic Ray Detection Wizard" | 289 |
| 13 | Screenshot of cosmic ray removal using default settings for map processing from the AJM-XX-1.5 map | 292 |

Case 1:23-cv-00879-GBW-CJB   Document 293-1   Filed 02/12/26   Page 4 of 5 PageID #: 3599

12/17/2025   Pfizer Inc. et al. vs Dexcel Pharma Tech. Limited, et al.   Adam Matzger, Ph.D.
Confidential

Page 6

1  THE VIDEOGRAPHER:  This is Video No. 1 of
2  the video-recorded deposition of Dr. Adam Matzger, in
3  the matter of Pfizer Inc., et al., vs. Dexcel Pharma
4  Technologies, Limited, et al., in the United States
5  District Court, District of Delaware, Case No. 23-
6  789-GBW-CJB.
7  This deposition is being held at
8  Williams & Connolly LLP, 680 Maine Avenue, Southwest,
9  Washington, D.C., on December 17th, 2025.  The time
10 on the video screen is 9:04 a.m.
11 My name is DeShawn White.  I am the legal
12 videographer from Digital Evidence Group.  The court
13 reporter is Amanda Blomstrom, in association with
14 Digital Evidence Group.
15 Will counsel please introduce themselves
16 for the record, followed by the court reporter
17 administrating the oath.
18 MR. MILLER:  Joshua Miller, from Windels
19 Marx Lane & Mittendorf, on behalf of Defendant Cipla
20 Limited.
21 MR. MANDERNACH:  Chris Mandernach, from
22 the Law Offices of Williams & Connolly, on behalf of

Page 7

1  the Plaintiffs entity -- Plaintiff entities.  And
2  with me today is Ayelet Evrony, of the same law firm.
3  ADAM MATZGER, Ph.D.,
4  having been first duly sworn, testified as follows:
5  EXAMINATION
6  BY MR. MILLER:
7  Q.  Good morning, sir.  Can you state your
8  name and address for the record, please.
9  A.  Sure.  Adam Matzger, and my address is
10 2240 Belmont Road in Ann Arbor, Michigan.
11 Q.  Okay.  You are aware that you're here to
12 testify in a litigation between a group of entities,
13 I'm going to call them "Pfizer" or "Plaintiffs," and
14 Defendant Cipla Limited, correct?
15 A.  Correct.
16 Q.  Okay.  And despite the fact that there
17 are numerous plaintiffs -- numerous? -- several
18 plaintiffs, Pfizer, FoldRX, PRISM, Wyeth, and
19 Scripps, I'm just going to call them "Pfizer" or
20 "Plaintiff."  Okay?
21 A.  Yeah, that's fine.
22 Q.  You've been deposed before, correct?

Page 8

1  A.  Yes.
2  Q.  So you're somewhat familiar.
3  I'm going to ask you to make sure all your
4  answers are audible, not "mm-hmm," "huh-uhs"; "yes"
5  or "noes" and that kind of thing.  Is that okay?
6  A.  Yes.
7  Q.  You've been retained by Plaintiffs to
8  offer opinions regarding the alleged infringement
9  by Cipla of Plaintiffs' patent, U.S. Patent
10 No. 9,770,441.  Is that accurate?
11 A.  Yes.
12 Q.  Okay.  And is it fair if we call that the
13 '441 patent for the rest of the deposition today?
14 A.  That would be great.
15 Q.  Okay. Are you aware that there are other
16 defendants in this litigation?
17 A.  I'm -- I'm aware of that, yes.
18 Q.  Okay.  And those other defendants are
19 entities named Dexcel, Aurobindo, and Hikma.  Is that
20 accurate?
21 A.  I'm not sure who all the defendants are.
22 Q.  Okay.  Are you familiar with Hikma as a

Page 9

1  defendant in this litigation?
2  A.  Yes, I am.
3  Q.  And they used to -- they acquired an ANDA
4  from a company called Zenara.  Are you familiar with
5  that fact?
6  A.  I am.
7  Q.  Okay.  I'm going to refer, regardless of
8  timing or any questions that may touch on them, to
9  Hikma and Zenara as "Hikma," okay?
10 A.  Sounds good.
11 Q.  Okay.  You have also been retained by
12 plaintiffs in this case to offer opinions regarding
13 alleged infringement by the Hikma entities, correct?
14 A.  Yes.
15 Q.  Okay.  A little bit more terminology for
16 this case.  I think sometimes we see a technology or
17 an investigative technology called X-ray powder
18 diffraction referred to as "XRPD" or "PXRD"
19 interchangeably.  Can we agree that those are the
20 same thing?
21 A.  Yes.  That's how I use it as well.
22 Q.  Okay.  I'm going to hand you what will be

Case 1:23-cv-00879-GBW-CJB   Document 293-1   Filed 02/12/26   Page 5 of 5 PageID #: 3600

12/17/2025   Pfizer Inc. et al. vs Dexcel Pharma Tech. Limited, et al.   Adam Matzger, Ph.D.
Confidential

Page 218

```
 1    A.    -- with it besides those samples.
 2    Q.    Okay.  Now, going back to Paragraph 168
 3  where you mention the risk of being accused of
 4  exposing your equipment to contamination.  What's the
 5  basis of your -- your position in Paragraph 168?
 6    A.    Almost every case I've ever been on.
 7    Q.    So you've had known infringing forms that
 8  have -- that you've tested known infringing forms of
 9  materials and then tested the accused products as
10  well, is that what you mean, or --
11    A.    Yes.
12    Q.    Okay.  Is there anything else other than
13  your experience in prior litigations that inform
14  Paragraph 168?
15    A.    Yeah, to be honest, with good laboratory
16  practices, I don't think it would be an issue.  But
17  since it wouldn't change the way I did my analysis, I
18  don't consider it worth the risk.
19    Q.    Okay.
20    A.    Or even the appearance of risk.
21    Q.    You kind of preempted my next question.  I
22  was going to say, there are ways to design and manage
```

Page 219

```
 1  the handling and experimentation that would, in your
 2  view, mitigate risk of contamination if you weren't
 3  to do a positive control test, right?
 4    A.    Yes, sure.
 5    Q.    And does that extend -- does that
 6  reasoning extend beyond Raman to also include XRPD
 7  testing, or are there other factors to consider
 8  there?
 9    A.    No, it's essentially the same answer for
10  XRPD testing.
11    Q.    It's a good -- good handling and testing
12  practice and should mitigate any risk?
13    A.    Yes.  I would say for -- for the
14  analytical side of things.
15    Q.    What's the other side of things?
16    A.    Well, sometimes you're trying to do a
17  crystallization.
18    Q.    Okay.
19    A.    Then the considerations are more serious.
20    Q.    Got it.
21          Now, despite the risk, as you pose it, of
22  being accused of exposing your laboratory to
```

Page 220

```
 1  contamination by other forms, you, nevertheless,
 2  accepted the risk of exposing your laboratory to both
 3  Cipla's and Hikma's forms, correct?
 4    A.    Well, there's no choice there.
 5    Q.    Meaning you didn't have another place to
 6  store one sample or the other; they had to be at the
 7  same lab?
 8    A.    The storage is not -- no issue.  It's, you
 9  know, that I think the question would be the testing.
10  I mean, when these are stored, they're enclosed
11  things, as we've talked about, blister packs and
12  things like this.  There's not real risk there.
13  It's -- you know, where the accusations start is when
14  you take things out of the package normally.  I think
15  most people understand sealed packages don't
16  communicate.
17    Q.    Okay.  Now, shift gears a little bit.
18          Just, at a high level, can you tell me,
19  what is XRPD?
20    A.    The technique?
21    Q.    Yeah.
22    A.    So in XRPD, you shine X-rays onto a
```

Page 221

```
 1  sample, normally a powdered sample would be the most
 2  common way, and these diffract, which is to mean that
 3  the X-rays constructively and destructively interfere
 4  by bouncing off the crystal planes.  And this gives
 5  you certain characteristic diffraction angles that
 6  can be used to characterize a material.
 7          They have underlying meaning related to
 8  the symmetry, size, and shape of the unit cell, but
 9  generally we treat it as a fingerprint.
10    Q.    "Underlying" meaning, I assume you're
11  referring to the Bragg's Law or something like that?
12    A.    Yeah, so the Bragg's Law, it comes back
13  to the spacings, and the spacings are the spacings
14  within the unit cell is what we're talking about
15  here.
16    Q.    Okay.  On a three-dimensional --
17    A.    In a three-dimensional --
18    Q.    -- space?
19    A.    -- which is why it's complicated
20  sometimes.
21    Q.    Understood.
22    A.    But, yeah.
```